IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT R. SWANEY and CHARLENE SWANEY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 10-521 Judge Nora Barry Fischer |
| NICHOLAS JORDAN and MELINDA CITERO, | ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

I. INTRODUCTION

Plaintiffs Scott R. Swaney and Charlene Swaney (collectively, "Plaintiffs"; individually, "Mr. Swaney" or "Mrs. Swaney") brought this action against Defendants Nicholas Jordan and Melinda Citero (collectively, "Defendants"; individually, "Jordan" or "Citero"), in their individual capacities, for alleged constitutional violations of the Fourth and Fourteenth Amendments of the United States Constitution, along with pendent state law tort claims, related to conduct that occurred on May 25, 2009. (*See* Docket No. 15). Currently pending before the Court is a Partial Motion to Dismiss filed by Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 19). For the reasons that follow, that Motion is denied.

II. FACTUAL BACKGROUND

Since this matter comes before the Court on a motion to dismiss, the factual allegations contained in Plaintiffs' Amended Complaint are assumed to be true. *Hemi Group, LLC v. City of N.Y.*, 130 S.Ct. 983, 986-87 (2010) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). According to the Amended Complaint, Plaintiffs are adult individuals who reside in Fairchance, Pennsylvania. (Docket No. 15 at ¶¶ 4,

1

5). Defendants are officers of the Pennsylvania State Police who are based in Fayette County, Pennsylvania. (*Id.* at ¶¶ 6, 7).

On the evening of May 25, 2009, Defendants arrived at the home of Tim Pechatsko, who is one of Plaintiffs' neighbors. (*Id.* at ¶¶ 12, 13). At that time, Plaintiffs were outside on their front porch and observed Defendants proceed to the rear entrance of Mr. Pechatsko's home. (*Id.* at ¶ 13). Shortly thereafter, Plaintiffs heard Jordan screaming and also heard a scuffle. (*Id.*). Plaintiffs then watched as Defendants escorted Mr. Pechatsko out of his home in handcuffs. (*Id.*).

While Mr. Pechatsko was in handcuffs, Plaintiffs witnessed Jordan deliberately choke the already restrained man. (*Id.* at ¶ 14). To this, Mr. Swaney told Jordan that "I saw what you did to him," and advised Mr. Pechatsko that he would testify for him. (*Id.* at ¶ 15). In response, Jordan yelled at Plaintiffs to go inside and further instructed them that they did not see a "fucking thing." (*Id.* at ¶ 16). Mr. Swaney complied with Jordan's initial demand and went into the home. (*Id.*). Following this exchange, Citero went to Plaintiffs' home for the purpose of ascertaining their respective names. (*Id.* at ¶ 18). In fear that she was being harassed, Mrs. Swaney followed her husband into the home to call a superior officer. (*Id.*).

After placing Mr. Pechatsko into his police vehicle, Jordan drove to Plaintiffs' home. (*Id.* at ¶ 18). While exiting his vehicle, he yelled to the Plaintiffs that "you are going to fucking jail." (*Id.* at ¶ 18). He then attempted to open a latched gate.[1] (*Id.* at ¶ 19). Because the gate was latched, Jordan reached over the gate and ripped the telephone from Mrs. Swaney's hand, disconnecting the line in the process. (*Id.*) Jordan then threw the phone across the porch. (*Id.*).

---

[1] It is unclear from Plaintiffs' Amended Complaint where the gate in question was located or to what it was connected. (*See* Docket No. 15 at ¶ 19).

While screaming that he could "do whatever I want," Jordan grabbed Mrs. Swaney by the arm and attempted to physically pull her over the gate. (*Id.* at ¶ 20). Jordan then discharged his taser gun in the direction of Mr. Swaney. (*Id.* at ¶ 21). The first probe hit Mr. Swaney in the forehead, while the second probe hit him in the chest. (*Id.*). Mr. Swaney attempted to reach for the phone to call for help, but was stopped from doing so when Jordan jumped the fence and climbed on to the porch. (*Id.* at ¶ 22). At that point, Jordan shot Mr. Swaney for a second time with his taser gun. (*Id.* at ¶ 23). The probes entered his left hand and his left arm. (*Id.*). In total, Jordan attempted to his discharge his taser gun on four occasions; however, a malfunction prevented the taser gun from working more than twice. (*Id.* at ¶ 26).

After he had been shot with the taser gun, Jordan struck Mr. Swaney on the head with his club or stick, which knocked him to the ground and caused him to lose consciousness. (*Id.* at ¶ 27). Thereafter, Jordan drew his service revolver and pointed it at Mrs. Swaney's face. (*Id.* at ¶ 28). Jordan pushed Mrs. Swaney to the floor of the porch, where she was then handcuffed by Citero. (*Id.* at ¶¶ 28, 29).

Around this time, Mr. Swaney began to regain consciousness and was bleeding profusely. (*Id.* at ¶ 30). Mrs. Swaney informed Defendants that her husband suffered from cancer and, as such, needed immediate medical attention. (*Id.*). In response, Jordan, still pointing his service revolver at Mrs. Swaney, placed his boot on top of her head, pushing it further onto the porch floor while shouting "shut up you fucking dumb bitch, he is tough, he can take it." (*Id.* at ¶ 31). Jordan then grabbed Mr. Swaney from the floor and threw him into a chair on the porch. (*Id.* at ¶ 32). He told Plaintiffs that "I am no longer an officer," and that the situation was "fucking personal." (*Id.* at ¶ 32).

Finally, other police officers arrived on the scene. (*Id.* at ¶ 33). The other officers called for a paramedic and Mr. Swaney was placed into an ambulance. (*Id.*). Mrs. Swaney repeatedly requested to speak to a superior officer regarding Defendants' conduct. (*Id.* at ¶ 34). Specifically, she asked to speak with a corporal in the police department, who had arrived on the scene. (*See Id.*). This request was denied by Jordan. (*Id.*).

Mrs. Swaney, while still in handcuffs, was initially placed in the back of Citero's police car. (*Id.* at ¶ 36). She was then asked to sign a document and was released from the vehicle. (*Id.*). Thereafter, Jordan told Mrs. Swaney that if he saw her at the hospital, he would arrest her. (*Id.* at ¶ 37). Jordan then released Mr. Pechatsko after he also signed a document. (*Id.* at ¶ 38).

Mr. Swaney's injuries were severe and he required immediate medical treatment. (*Id.* at ¶ 39). He was transported to the Emergency Room at Uniontown Hospital, where he was treated for a deep gash to his head that required staples and wounds to his hands where the taser probe had lodged. (*Id.*). His injuries have caused him near blindness and extreme headaches. (*Id.* at ¶ 40). He has had to seek recurrent medical treatment. (*Id.* at ¶ 41). Similarly, Mrs. Swaney sought treatment for bruises and an injured left shoulder. (*Id.* at ¶ 42).

Both Plaintiffs were eventually charged with disorderly conduct, and Mr. Swaney was also charged with resisting arrest. (*Id.* at ¶¶ 43, 44). In an effort to have the charges against his wife dropped, and to allow his entrance into the state's ARD Probation Program, Mr. Swaney pled guilty to these charges. (*Id.* at ¶ 44). The charges against Mrs. Swaney were reinstated two weeks later, but were again dropped at a subsequent magistrate hearing. (*Id.*). Ultimately, Mr. Swaney applied for and was accepted into the probation program. (*Id.*).

III. PROCEDURAL HISTORY

On April 23, 2010, Plaintiffs commenced this action against Defendants in the Western District of Pennsylvania, alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution and the tort law of Pennsylvania. (Docket No. 1 at ¶¶ 50-99). Their federal constitutional claims were brought pursuant to 42 U.S.C. § 1983, (*Id.* at ¶¶ 51, 74), and their state-law claims were brought under Pennsylvania common law for intentional infliction of emotional distress, assault and battery, and loss of consortium. (*Id.* at ¶¶ 64-72, 87-99). Defendants filed both a Partial Motion to Dismiss, seeking the dismissal of all of Plaintiffs' tort claims along with Plaintiffs' Fourteenth Amendment claims, as well as a Partial Answer on October 13, 2010. (Docket Nos. 10, 12).

Subsequently, Plaintiffs filed an Amended Complaint on November 2, 2010.[2] (Docket No. 15). That same day, Plaintiffs filed a second document, titled "Plaintiffs' Response to Defendants' Partial Motion to Dismiss," wherein they withdrew any substantive claims made under the Fourteenth Amendment and agreed that their constitutional claims should be analyzed under a Fourth Amendment standard.[3] (Docket No. 16 at 1). Additionally, within the later filing, Plaintiffs also clarified that their loss of consortium claims relate solely to their pendent state law claims and not to the alleged civil rights violations.[4] (*Id.* at 3). Given the filing of

---

[2] The Court notes that Plaintiffs did not seek leave of Court prior to filing their Amended Complaint, (*see* Docket No. 15), however, the filing of the Amended Complaint was in accord with Federal Rule of Civil Procedure 15(a)(1)(B) as it was filed within 21 days after service of Defendants' partial Answer. Fed. R. Civ. P. 15(a)(1)(B).

[3] The Supreme Court has held that where a particular provision of the Bill of Rights provides an explicit source of constitutional protection against a specific category of governmental action, the more generalized notion of "substantive due process" is inapplicable. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion). Here, the Court understands Plaintiffs to agree that the Fourth Amendment provides the "explicit textual source of constitutional protection" against an officer's use of excessive force. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that all claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and not under a "substantive due process" approach).

[4] Indeed, "[u]nder Pennsylvania law, a spouse's right to recover for loss of consortium derives only from the other spouse's right to recover in tort." *Melencheck v. HCR Manor Care*, Civ. No. 08-966, 2009 U.S. Dist. LEXIS 74207, at *6 (W.D. Pa. Mar. 10, 2009) (internal quotation omitted). The Court notes that civil rights

5

Plaintiffs' Amended Complaint, the Court terminated Defendants' initial Partial Motion to Dismiss, as moot, on November 3, 2010.

As in the original Complaint, the Amended Complaint names Jordan and Citero as Defendants in their individual capacity. (*Compare* Docket No. 1 at ¶¶ 6, 7, *with* Docket No. 15 at ¶¶ 6, 7). On November 11, 2010, Defendants again filed a Partial Motion to Dismiss, along with a supporting brief, wherein they argue that they are entitled to sovereign immunity on all of Plaintiffs' state law tort claims.[5] (Docket Nos. 19, 20). Subsequently, Plaintiffs filed a series of motions requesting extensions of time within which to file their response, (*see* Docket Nos. 26, 28, 30, 32), which the Court granted for good cause shown, (*see* Docket Nos. 27, 29, 31, 33, 34).[6] Ultimately, on March 8, 2011, Plaintiffs filed their response to Defendants' motion. (Docket No. 35). As the motion is now fully briefed, it is ripe for disposition.

IV. STANDARD OF REVIEW

In light of the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at

---

violations cannot support loss of consortium claims. *See Id.* at *6-7 ("Here, Plaintiff has only asserted a claim for violation of her civil rights. Absent a viable tort claim asserted by Plaintiff, her husband cannot bring a claim for loss of consortium.") (citing *Danas v. Chapman Ford Sales, Inc.*, 120 F. Supp. 2d 478, 489 (E.D. Pa. 2000)); *see also Taylor v. Pilewski*, Civ. No. 08-611, 2008 U.S. Dist. LEXIS 86396, at *7 (W.D. Pa. Sept. 8, 2008) ("It is well established that a spouse has no standing to assert Section 1983 claims based on violations of the other spouse's civil rights.").

[5] Defendants also filed a second Partial Answer on November 11, 2010. (Docket No. 21).

[6] Pursuant to the Local Rules for the Western District of Pennsylvania, this case was referred to Early Neutral Evaluation, with said ADR Conference occurring on December 21, 2010. (*See* Docket Nos. 24, 25). After the conclusion of same, the Court was initially advised – both in filings and in correspondence with the Court's law clerk – that the parties planned to participate in a follow-up mediation session in the hopes of resolving this matter. (*See* Docket Nos. 28, 30). More recently, however, the Court was advised, via email received on March 3, 2011, that it did not appear that a subsequent ADR session was going to be conducted, at which time it was indicated that no further extensions would be granted. (*See* Docket Nos. 33, 34).

570). This standard requires more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must allege a sufficient number of facts "to raise a right to relief above the speculative level." *Id.* This requirement is designed to facilitate the notice-pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In considering a motion to dismiss, a court accepts all of the plaintiff's allegations as true and construes all inferences drawn from those allegations in the light most favorable to the plaintiff. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Marion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). In addition to the allegations contained in the complaint, a court may consider matters of public record, exhibits attached to the complaint, and other items appearing in the record of the case. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

V. DISCUSSION

Defendants contend that Plaintiffs' state law tort claims for intentional infliction of emotional distress, assault and battery, and loss of consortium should be dismissed because they are barred under the doctrine of sovereign immunity.[7] (*See* Docket Nos. 19 at ¶ 2, 20 at 3-5).

Article I, § 11 of the Pennsylvania Constitution provides:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may be law direct.

Pa. Const. Art. I, § 11. As the language of this constitutional provision indicates, it is the prerogative of the Pennsylvania Legislature to specify the types of "cases" which warrant suits against the Commonwealth of Pennsylvania. *See Lingo v. Phila. Hous. Auth.*, 820 A.2d 859, 861 (Pa. Commw. Ct. 2003). In accordance with this authority, the Pennsylvania Legislature has enacted 1 Pa. Cons. Stat. § 2310, which provides:

> Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

1 Pa. Cons. Stat. § 2310. Pursuant to the plain language of this provision, employees of the Commonwealth are entitled to sovereign immunity (except where specifically provided to the

---

[7] Defendants do not challenge the sufficiency of the Amended Complaint with respect to Plaintiffs' Fourth Amendment claims. (*See* Docket Nos. 19 at ¶ 2, 20 at 5). To this end, the Court notes that an immunity afforded to a state official under state law cannot defeat a cause of action arising under federal law. *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 … cannot be immunized by state law.").

8

contrary by a separate statutory provision) when they act "within the scope of their duties." *Story v. Mechling*, 412 F. Supp. 2d 509, 518-19 (W.D. Pa. 2006).

The Sovereign Immunity Act makes it clear that, except as specifically provided therein, no statutory provision shall constitute a waiver of the Commonwealth's sovereign immunity. 42 Pa. Cons. Stat. § 8521(a). The relevant statutory language is codified at 42 Pa. Cons. Stat. § 8522(a), which provides:

> The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

42 Pa. Cons. Stat. § 8522(a).[8] The term "Commonwealth party" is defined as "[a] commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment."[9] 42 Pa. Cons. Stat. § 8501. Plaintiffs do not dispute that

---

[8] Section 8528(b) of the Sovereign Immunity Act provides that "[d]amages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $250,000 in favor of an plaintiff or $1,000,000 in the aggregate." 42. Pa. Cons. Stat. § 8528(b). Section 8528(c) limits the types of damages recoverable from a Commonwealth party to past and future loss of earnings capacity, pain and suffering, medical and dental expenses, loss of consortium, and property losses. 42 Pa. Cons. Stat. § 8528(c)(1)-(5). Medical and dental expenses recoverable from Commonwealth parties include "the reasonable value of reasonable and necessary medical and dental services, prosthetic devices and necessary ambulance, hospital, professional nursing, and physical therapy expenses accrued and anticipated in the diagnosis, care and recovery of the claimant." 42 Pa. Cons. Stat. § 8528(c)(3). Damages for property losses are not available in actions "relating to potholes and other dangerous conditions." 42 Pa. Cons. Stat. § 8528(c)(5).

[9] The term "act" includes "a failure to act." 42 Pa. Cons. Stat. § 8501. The term "employee" is defined as follows:

> Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis, whether compensated or not and whether within or without the territorial boundaries of the government unit, including any volunteer fireman and any elected or appointed officer, member of a governing body or other person designated to act for the government unit. Independent contractors under contract to the government unit and their employees and agents and persons performing tasks over which the government unit has no legal right of control are not employees of the government unit.

none of the "instances set forth in subsection (b)" are applicable in this case.[10] (*Compare* Docket Nos. 16, 35, *with* Docket No. 20 at 4). Therefore, the dispositive question is whether Defendants' actions, as alleged in the Amended Complaint, were "within the scope of their duties" as officers of the Pennsylvania State Police. If so, they are immune from Plaintiffs' state law tort claims.

Under Pennsylvania law, even unauthorized actions taken by an employee can fall within the scope of his or her employment if they are "clearly incidental" to his or her employer's objectives. *Brumfield v. Sanders*, 232 F.3d 376, 381 (3d Cir. 2000). In *Natt v. Labar*, the Pennsylvania Commonwealth Court explained:

> Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another, it is not unexpected by the employer.

543 A.2d 223, 225 (Pa. Commw. Ct. 1988) (citing *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1272 (Pa. Super. Ct. 1979).[11] The extent to which the intentional use of "force" is properly

---

*Id.*

[10] Subsection (b) enumerates nine categories of actionable "acts" for which a Commonwealth party is not entitled to sovereign immunity. 42 Pa. Cons. Stat. § 8522(b). These categories are referenced in the statutory language as follows: (1) Vehicle liability; (2) Medical-professional liability; (3) Care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) Potholes and other dangerous conditions; (6) Care, custody or control of animals; (7) Liquor store sales; (8) National Guard activities; and (9) Toxoids and vaccines. 42 Pa. Cons. Stat. § 8522(b)(1)-(9). Defendants' actions clearly do not fall within any of these categories of conduct. Moreover, intentional infliction of emotional distress, assault and battery are all intentional torts. *See Acker v. Spangler*, 500 A.2d 206, 207 n.2 (Pa. Commw. Ct. 1985). Consequently, none of the three can fairly be characterized as a "negligent act" within the meaning of 42 Pa. Cons. Stat. § 8522(a).

[11] This language appears to come directly from the Restatement (Second) of Agency, § 228. Indeed, as recognized by the United States Court of Appeals for the Third Circuit, the Pennsylvania Superior Court has adopted the standard set forth in Restatement (Second) of Agency § 228 to determine whether an employee's conduct is within the scope of employment. *Aliota v. Graham*, 984 F.2d 1350, 1358 (3d Cir. 1993) (citing *Butler v. Flo-Ron Vending Co.* 557 A.2d 730, 736 (Pa. Super. Ct. 1989)). In the absence of any contrary decisions or pronouncements by the Supreme Court of Pennsylvania, the Court of Appeals has predicted that the state Supreme Court will follow this holding. *See Aliota*, 984 F.2d at 1358; *see also Brumfield*, 232 F.3d at 380 ("Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct 'within the scope of employment.'"). Likewise, the Court

characterized as an act within the scope of one's employment depends on the extent of an employer's *expectation* of force rather than on the extent of an employer's *authorization* of force. *See Strothers v. Nassan*, Civ. No. 08-1624, 2009 U.S. Dist. LEXIS 30208, at *26-27 (W.D. Pa. Apr. 9, 2009). While the question of whether an individual has acted within the scope of his employment is typically a question of fact for a jury, the issue can be decided as a matter of law where the facts and inferences drawn from the complaint are not in dispute. *Id.* at *27. Ultimately, an act by a Commonwealth official or employee that does not satisfy the criteria identified in *Natt* is outside the scope of employment and is not covered by state sovereign immunity. *See Bowman v. Reilly*, Civ. No. 09-1322, 2009 U.S. Dist. LEXIS 48505, at *10 (E.D. Pa. June 10, 2009) (referencing the standard set forth in § 228 of the Restatement (Second) of Agency).

Within this framework, Defendants argue that they were acting within the scope of their employment during the entirety of the incident. (*See* Docket No. 20). Specifically, they assert that "[s]ubduing persons who refuse to follow police orders, filing charges against people, and participating in prosecutions are definitely several of the many types of acts law enforcement officers are employed to perform." (*Id.* at 3-4). They further assert that "the use of force in the commission of their duties, if necessary, is also one of the many acts law enforcement officers are employed to perform." (*Id.* at 4). Plaintiffs dispute these assertions. (*See* Docket No. 35). In particular, Plaintiffs respond that statements made by Jordan at the scene, accompanied with Citero's failure to respond or intervene on their behalf, establish that neither Defendant was

---

of Appeals has predicted that the Supreme Court of Pennsylvania will adopt other related provisions of the Restatement (Second) of Agency. *See Aliota*, 984 F.2d at 1358.

acting within the scope of his or her employment duties.[12] (*Id.* at 3). Moreover, Plaintiffs cite the following allegations as actions that fall outside of Defendants' scope of authority: (1) using excessive force; (2) committing an assault; (3) committing a battery; (4) bringing false criminal charges; and (5) participating in an unlawful prosecution.[13] (*See* Docket Nos. 16 at 2; 35 at 2 n.3)

Accepting Plaintiffs' factual allegations as true, the Court concludes that a reasonable reading of the Amended Complaint establishes that Defendants may have acted outside the scope of their employment in a manner sufficient to overcome Defendants' sovereign immunity defense at the pleading stage. *See Revak v. Lieberum*, Civ. No. 08-691, 2008 U.S. Dist. LEXIS 91029, at *11-12 (W.D. Pa. Nov. 10, 2008).

---

[12] In their "Response to Defendants' Second Partial Motion to Dismiss," Plaintiffs also contend that Defendants are not entitled to qualified immunity. (*See* Docket No. 35 at 2). The Supreme Court has explained the doctrine of qualified immunity as follows:

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." [Internal citation omitted.]. Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

*Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citing and quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); also citing and quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (citing *Butz v. Economou*, 438 U.S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")). However, Defendants do not rely on qualified immunity in their Partial Motion to Dismiss. (S*ee* Docket Nos. 19, 20). Therefore, the Court will not further entertain Plaintiffs' argument at this time.

[13] Notably, under 42 Pa. Cons. Stat. § 8550, employees of local agencies are not immune from suits based on acts constituting "willful misconduct." There is no similar provision waiving the immunity of "Commonwealth parties" who engage in "willful misconduct." *Holt v. Nw. Pa. Training P'ship Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa. Commw. Ct. 1997) ("Unlike for local agency employees, willful misconduct does not vitiate a Commonwealth employee's immunity because sovereign immunity protects a Commonwealth employee acting within the scope of his or her employment from liability, even for intentional acts which cause emotional distress."); *see also Yakowicz v. McDermott*, 548 A.2d 1330, 1333 (Pa. Commw. Ct. 1988), *appeal denied*, 565 A.2d 1168 (Pa. 1989) (noting that Commonwealth employees are immune from liability even for intentional torts but that local agency employees lose their immunity defense where their actions constitute a crime, actual fraud, actual malice or willful misconduct). Consequently, unlike local agencies and their employees, "Commonwealth employee[s] [are] protected by sovereign immunity from the imposition of liability for intentional tort claims," provided they have acted within the scope of their duties. *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992).

In making this determination, the Court recognizes that other district courts have found that the conduct of an officer may be so excessive that he is not acting within the scope of his employment. *See*, *e.g.*, *Bowman*, 2009 U.S. Dist. LEXIS 48505, at *11-15 (denying a motion to dismiss on the grounds that the defendant state police officer's act of shooting the plaintiff in the neck during a traffic stop may have been outside the scope of his employment). For instance, in *Wesley v. Hollis*, the district court stated that "[w]here the alleged intentional tort was unprovoked, unnecessary or unjustified by security concerns or penological goals, courts have ruled that such conduct does not, as a matter of law, fall within the scope of employment." Civ. No. 03-3130, 2007 U.S. Dist. LEXIS 41562, at *50 (E.D. Pa. June 7, 2007). Similarly, in *Strothers v. Nassan*, this Court acknowledged the principle that "an assault committed by an employee upon another for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment." 2009 U.S. Dist. LEXIS 30208, at *31 (quoting *R.A. v. First Church of Christ*, 748 A.2d 692, 700 (Pa. Super. Ct. 2000)). In addition, "[t]he fact that an assault has been carried out by an employee in an 'outrageous manner' may be indicative that the employee has acted out of 'private malice' rather than out of an intent to perform his or her duties." *Strothers*, 2009 U.S. Dist. LEXIS 30208, at *31 (citing *Lunn v. Yellow Cab Co.*, 169 A.2d 103, 105 (Pa. 1961)).

Counseled by these decisions, and the factual averments in the Amended Complaint, this Court concludes that Plaintiffs are entitled to engage in discovery concerning the "reasons" for Defendants' actions. Consequently, Defendants' Partial Motion to Dismiss is denied, without prejudice. (*See* Docket No. 19). Defendants remain free to move for summary judgment with respect to this issue if discovery reveals that they acted pursuant to their employment responsibilities rather than pursuant to personal motives unrelated to law enforcement. *See*

*Strothers*, 2009 U.S. Dist. LEXIS 30208, at *32 (citing *Pizzuto v. County of Nassau*, 239 F. Supp. 2d 301, 314-16 (E.D.N.Y. 2003)).

VI. CONCLUSION

Because the allegations made in the Amended Complaint, when construed in the light most favorable to Plaintiffs, could plausibly entitle Plaintiffs to relief under the tort law of Pennsylvania, Defendants' Partial Motion to Dismiss, (Docket No. 19), is DENIED, without prejudice. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: April 19, 2011

cc/ecf: All counsel of record.